UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61766-CIV-ROSENBAUM/HUNT

DENISE M. LAHTINEN,
as personal representative of the
Estate of Raymond Jean Laliberte
and Beulah L. Laliberte,

       Plaintiff,

v.

LIBERTY INTERNATIONAL FINANCIAL
SERVICES, INC., LIBERTY INTERNATIONAL
HOLDINGS CORPORATION,
CHRISTOPHER ANZALONE, and
JEFFREY SCHULER,

       Defendants.
_____/

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court upon Defendants Liberty International Financial Services, Inc., Liberty International Holdings Corporation, Christopher Anzalone, and Jeffrey Schuler's Motion to Dismiss [ECF No. 14]. The Court has considered all supporting and opposing filings and the record in this case. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

***I. Background*** [1]

Denise Lahtinen was appointed as a personal representative of the Estates of Raymond Jean

---

[1] The facts set forth in this section are drawn from the Complaint. On a motion to dismiss, the Court must accept as true the factual allegations in the complaint and must construe them in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (citation omitted).

Laliberte and Beulah Laliberte upon their respective deaths. *See* ECF No. 1 at ¶¶ 1, 2, 11. Before he died, Raymond Laliberte opened and maintained an investment account with Liberty International Financial Services, Inc. ("LIFS"), under account number 1222. *Id.* at ¶ 10. At the time of Laliberte's death, account number 1222 had a value of $353,325.00. *See id*. at ¶ 12. Plaintiff instructed LIFS and Defendant Christopher Anzalone, the president and chief operating officer of LIFS, to liquidate the account. *Id.* at ¶14. After accounting for outstanding loans, fees, and costs, the account had a balance of $190,904.74. *See id*. at ¶ 14.

On about June 8, 2012, in response to repeated requests by Plaintiff, Defendants issued a check for $190,904.74. *See id*. at ¶ 15. When Plaintiff deposited the check, however, it was returned for insufficient funds. *See id*. at ¶ 16. Thereafter, Plaintiff repeatedly attempted to collect the monies from Defendants, but Defendants never provided it. *See id.* at ¶¶ 17-19.

Ultimately, on about February 5, 2013, the parties reached a settlement. *See id*. at ¶ 20. In the settlement, Defendants admitted to the debt and conceded that they "may be liable to Lahtinen and Laliberte for their action in violation of Federal and Florida Statutes and laws." *See id*. at ¶ 21. Among other remedies, the settlement agreement stated that Defendants would issue to Plaintiff 76,000 shares of restricted common stock in Liberty International Holding Company ("LIHC"). *See id*. at ¶ 24. In the event that Defendants failed to issue the LIHC stock, Defendants agreed to pay $5,000.00 per month until the full amount of the debt was satisfied. *See id*. The settlement agreement also contained the following provision:

> 13. [LIFS, Liberty International Holding Corporation ("LIHC"),] and Anzalone hereby consent to the exclusive jurisdiction and venue of the Courts of the Commonwealth of Massachusetts for any disputes arising under this Agreement

> or the enforcement of its terms.

ECF No. 1-5 at ¶ 13.

Despite Defendants' agreement to the terms of the settlement, Defendants failed to issue the shares or to make the monthly payments. *See id*. at ¶ 25. As of August 14, 2013, when Plaintiff filed the pending case in this District, Defendants had still failed to make a single payment. *Id.* The Complaint asserts claims for breach of settlement agreement (Count I), constructive trust (Count II), and conversion. Defendants seek to dismiss this action, alleging improper venue and failure to state a claim.

## *II. Discussion*

### A. Motion to Dismiss for Improper Venue

Defendants argue that this matter must be dismissed for lack of venue[2] pursuant to Rule 12(b)(3), Fed. R. Civ. P., based on a valid forum-selection clause contained in the settlement agreement entered into by the parties. Title 28, United States Code, Section 1391 provides for venue in diversity actions such as this one. Specifically, Section 1391(b)(1) states that a civil action proceeding in diversity jurisdiction may be brought in "a judicial district in which any defendant

---

[2]Defendants also move to dismiss for lack of jurisdiction based on the forum-selection clause. The Eleventh Circuit has concluded, however, that "'motions to dismiss based upon forum-selection clauses ordinarily are not properly brought pursuant to Rule 12(b)(1) . . . because the basis upon which the defendants seek dismissal — namely, that the agreement of the parties prohibit[s] the plaintiff from bringing suit in the particular forum — is unrelated to the actual basis of federal subject matter jurisdiction. . . .' Instead, . . . a motion pursuant to Rule 12(b)(3) is the proper vehicle to request dismissal of a complaint on the basis of a contractual choice of forum." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1332-33 (11th Cir. 2011) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289 (11th Cir. 1998)).

3

resides, if all defendants are residents of the State in which the district is located[.]"

Here, the Complaint alleges diversity jurisdiction under 28 U.S.C. § 1332(a) and further asserts that Plaintiff and the Estates that she represents all reside outside of Florida, all Defendants reside in the Southern District of Florida, and the amount in controversy exceeds $75,000.00. *See* ECF No. 1 at ¶¶ 3-9.  Defendants do not contest any of these allegations.  Because diversity jurisdiction exists under these facts and all Defendants are alleged to reside in the Southern District of Florida, by the terms of Section 1391(a)(1), venue is proper in the Southern District of Florida.

Therefore, venue here can be improper only if paragraph 13 of the settlement agreement precludes it, as "[m]andatory forum-selection clauses are 'presumptively valid and enforceable' absent a 'strong showing that enforcement would be unfair or unreasonable under the circumstances.'" *Slater*, 634 F.3d at 1331 (citation omitted).  This Court concludes that paragraph 13 of the settlement agreement does not limit Plaintiff from bringing this action in the Southern District of Florida.

While it is true that the provision employs the phrase "exclusive jurisdiction and venue," significantly, paragraph 13 binds only LIFS, LIHC, and Anzalone to agree submit to the exclusive jurisdiction and venue of the Courts of the Commonwealth of Massachusetts; it does not even purport to limit Plaintiff's choices in bringing this action.  As a review of the settlement agreement reveals, paragraph 13 is designed to allow Plaintiff, if she alone so chooses, to proceed against Defendants LIFS, LIHC, and Anzalone in the Massachusetts courts, regardless of whether venue and personal jurisdiction over these Defendants otherwise exists in the Massachusetts courts.  But nothing in the agreement requires Plaintiff to engage in legal process before the courts of

Massachusetts. For this reason, and because venue in the Southern District of Florida is proper, Defendants' Motion to Dismiss for Improper Venue must be denied.

**B.  Motion to Dismiss for Failure to State a Claim**

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss for failure to state a claim. That rule provides, in relevant part,

> **(b)** **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(6)** failure to state a claim upon which relief can be granted; . . . .

*Id.* The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009); *Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. 2009); *Cobb v. State of Fla.*, 293 F. App'x 708, 709 (11th Cir. 2008); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.  2007). "[N]aked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly*, 550 U.S. at 555, 557. As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a

right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562). On a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Syst., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

Courts therefore conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679. A court should first ask whether the pleading properly asserts "well-pleaded factual allegations" or instead merely asserts "'legal conclusions' [that are] not entitled to the assumption of truth." *Id*. at 679-80 (quoting *Twombly*, 550 U.S. at 555). If the complaint contains factual allegations that are well pled, the court should assume their veracity, and then move to the next step and ask whether the factual allegations "plausibly give rise to an entitlement to relief." *Id*. at 679. Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id*. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted).

Here, Defendants make various arguments for dismissing the Complaint for failure to state a claim. As explained below, no basis succeeds, and Defendants' Motion to Dismiss for Failure to State a Claim must be denied.

6

*1. Single Counts Alleged Against More Than One Defendant*

Defendants first complain that the Complaint impermissibly "lump[s] together" various Defendants in single counts. In this regard, Defendants challenge the Complaint's assertion of Count I for breach of settlement agreement against three Defendants — Anzalone, LIFS, and LIHC,[3] and of Count III for conversion against two Defendants — Anzalone and Schuler. They claim that this circumstance renders "it impossible for each separate and individual Defendant to be able to properly and fully respond to the complaint." ECF No. 14 at ¶ 3.

The Complaint belies Defendants' concern. First, Defendants LIFS, LIHC, and Anzalone all are signatories to the settlement agreement. Second, the Complaint specifies the various commitments that Defendants LIFS, LIHC, and Anzalone made in the agreement and alleges who breached them. For example, paragraph 22 of the Complaint asserts that LIFS, LIHC, and Anzalone agreed to pay $5,000 to Plaintiff by February 5, 2013, and paragraph 23 avers that these same Defendants did not make the required payment. The mere fact that all three Defendants are alleged to have breached the settlement agreement in the same way does not require that Plaintiff plead a separate count against each Defendant for exactly the same alleged breach. Third, even if Plaintiff intended to plead the claims against the different Defendants in the alternative, Rule 8(d), Fed. R. Civ. P., permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count . . . or in separate ones. . . ." In short, the Complaint adequately puts Defendants on notice of the ways in which Plaintiff alleges each Defendant breached

---

[3]Defendants contend that Defendant Schuler "should be dismissed with prejudice from Count I." ECF No. 14 at ¶ 12. But the Complaint does not assert Count I against Defendant Schuler. Therefore, there is nothing in Count I to dismiss as it pertains to him.

the settlement agreement.

Nor does Defendants' objection to the conversion count fare any better. Count III, the conversion count, claims that Defendants Anzalone and Schuler "converted the proceeds for their own use and benefit." ECF No. 1 at ¶ 48. As with the breach-of-settlement-agreement count, the simple fact that the Complaint alleges that both Defendants Anzalone and Schuler participated in the same challenged conduct does not somehow render the Complaint confusing or unclear as it regards what Plaintiff claims Defendants Anzalone and Schuler did. Thus, Defendants' objection on this ground must be overruled.

*2. Compliance With Rule 1.130, Fla. R. Civ. P.*

Next, Defendants argue that the Court must dismiss the Complaint because Plaintiff did not attach any documentation showing (1) that she was appointed as the personal representative of the Estates of the Labertes, (2) that Raymond Laliberte opened an investment account with LIFS under account number 1222, or (3) that demands were made of Defendants to liquidate Raymond Laliberte's LIFS account. *See* ECF No. 14 at ¶¶ 5-7. In support of this position, Defendants suggest that Rule 1.130, Fla. R. Civ. P., requires the attachment of such documentation to the Complaint.

This Court need not determine whether that is, in fact, the case.[4] Plaintiff brings this matter

---

[4]While this Court does not opine on whether the alleged missing documentation is central to this case, particularly in light of other attachments to the Complaint, the alleged centrality of the missing documentation seems questionable. For example, the Complaint does append Raymond Laliberte's account statement dated November 15, 2010, for his LIFS account number 1222, *see* ECF No. 1-2, which would certainly tend to provide evidence that Laliberte, in fact, opened account number 1222 with LIFS. Similarly, the Complaint attaches a copy of a check that LIFS wrote to the Estate of Raymond J. Laliberte for $190,904.74, ECF No. 1-4, which suggests that, at some point, Laliberte or his representative made a demand for liquidation upon Defendants since, presumably, they did not decide on their own to write such a check to

in diversity, so the Court applies federal law to procedural issues. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). As Rule 1.130 is a part of Florida's Rules of Civil *Procedure*, it is not applicable here. Instead, the Federal Rules of Civil Procedure apply, and, while Rule 10(c), Fed. R. Civ. P., permits a plaintiff to attach "[a] copy of a written instrument [to her pleading, thereby causing it to be] is a part of the pleading for all purposes," nothing in the rules requires that a plaintiff must do so. To the contrary, even assuming, *arguendo*, that the allegedly missing documentation were critical to the case, in the Eleventh Circuit, when a complaint lacks a central exhibit, the remedy is not dismissal; instead, the defendant may supplement the record with the necessary documentation to allow the court to consider the defendant's motion challenging the complaint substantively. *See, e.g.*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.16 (11th Cir. 1999) (noting that when a plaintiff files a complaint based on a document but does not attach a copy of that document to the complaint, the defendant may introduce the document to his motion attacking the complaint).

Moreover, Defendants' Motion to Dismiss, which challenges the Complaint for not attaching evidence of the allegations Plaintiff asserts, essentially seeks for the Court to require Plaintiff to prove her case at the pleading stage. But Defendants have not filed a motion for summary judgment, where a plaintiff must make some evidentiary showing to survive; they have filed a motion to dismiss. And on a motion to dismiss, the Court must accept as true the factual allegations in the complaint. *Am. Dental Ass'n.*, 605 F.3d at 1288 (citation omitted). For all of these reasons, dismissal is not appropriate simply because the Complaint does not have appended to it exhibits that

---

Laliberte's Estate.

9

Defendants desire.

*3.  Conversion*

Finally, Defendants argue that this Court should dismiss Plaintiffs' conversion claim because "Plaintiffs do not plead that either Anzalone or Schuler took their funds with the intent to retain them and never to return them to the Plaintiff." *See* ECF No. 14 at ¶ 24.  Under Florida, law, to establish a claim for conversion of money, a plaintiff must show all of the following: (1) specific and identifiable money is involved in the alleged offense; (2) the plaintiff enjoys an immediate right to possess that money; (3) an unauthorized act has occurred that has deprived the plaintiff of that money; and (4) the plaintiff has made a demand for return of the money, and the defendant has refused to comply.  *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264-65 (M.D. Fla. 2003) *aff'd* 419 F.3d 1208 (11th Cir. 2005).

As to whether intent is a necessary element of conversion, as another court in this District has noted, Florida courts are split on the question.  *See Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1262 (S.D. Fla. 1994) (collecting cases on both sides of the issue and ultimately concluding that intent is required).  *But see Bailey*, 288 F. Supp. 2d at 1264 (holding that "[n]either knowledge nor intent are required").  When a federal court sits in diversity and applies state law, first, the court must consider any rulings of Florida's Supreme Court.  *See Bailey v. Southern Pacific Transp. Co.*, 613 F.2d 1385, 1388 (5th Cir.), *cert. denied*, 449 U.S. 836 (1980)).  Where the highest court in the state has rendered no decisions on point, however, this Court must follow the opinions of Florida's intermediate courts, unless it is "convinced that the highest court would decide otherwise."  *Id.* (citing *Commissioner v. Bosch*, 387 U.S. 456, 465 (1967)).

After careful consideration, this Court concludes that Florida's Supreme Court would — and has — determined that a plaintiff must prove intent in order to succeed on conversion. Accordingly, intent is a necessary element of conversion. As the Third District Court of Appeal has explained, "The essence of conversion . . . is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present *intent* on the part of the wrongdoer to deprive the person entitled to possession of the property." *Brand v. Old Republic Nat'l Title Ins. Co.*, 797 So. 2d 643, 646 (Fla. 3d DCA 2001) (citing *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984); (*Wilson Cypress Co. v. Logan*, 162 So. 489, 490-91 (Fla. 1935)) (emphasis added). And *Wilson Cypress*, the case on which the Third Circuit relied in reaching this determination, states, "A taking with *intent* to exercise an ownership inconsistent with the owner's right of possession is a conversion." *Wilson Cypress*, 162 So. at 127 (emphasis added); *see also Quitman Naval Stores Co. v. Conway*, 58 So. 840 (Fla. 1912) ("Where there is taking of chattels *with intent* to exercise over them an ownership inconsistent with the real owner's right of possession, there is a conversion.") (emphasis added). Moreover, the Florida Supreme Court has more recently noted in *dicta*,

> Intentional tort claims such as fraud, *conversion*, intentional interference, civil theft, abuse of process, and other torts *requiring proof of intent* generally remain viable either in the products liability context or if the parties are in privity of contract. As noted by one commentator, a rule barring recovery for economic loss "is not an escape hatch from intentional commercial torts."

*Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 543 n.3 (Fla. 2004) (emphasis added), *overruled on other grounds by Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399 (Fla. 2013). Based on the central role that Florida's Supreme Court has recognized

intent plays in a conversion claim, this Court concludes that intent is a necessary element of the cause of action.

In this case, Plaintiff does not expressly allege that Defendants intended to convert the money at issue to their own use. But that is not necessarily fatal to her Complaint. As previously discussed, on a motion to dismiss, the Court must view the facts in the light most favorable to the non-moving party. As to Defendant Anzalone, the allegations here allow for the reasonable inference that he intended to convert the funds. In particular, the following allegations sufficiently demonstrate Anzalone's alleged intent: (1) Defendant Anzalone was the president and chief operating officer of Defendant LIFS at all material times; (2) Plaintiff instructed LIFS and Anzalone to liquidate the account; (3) LIFS issued an insufficient-funds check payable to the Estate of Raymond Laliberte; (4) Plaintiff made repeated requests to LIFS and Anzalone for payment of the proceeds, and they ignored the requests; (5) subsequently, Defendants LIFS and Anzalone advised Plaintiff that they required additional time to pay and stated that they would make payment upon obtaining the funds from another party; (6) instead of paying Plaintiff, Defendants Anzalone and Schuler converted the proceeds for their own use and benefit; (7) Plaintiff and Defendants LIFS, LIHC, and Anzalone then entered into a settlement agreement in which they admitted that they were indebted to Plaintiff for the amount of the allegedly converted funds and that Plaintiff should receive all amounts owed to her; and (8) Defendants LIFS, LIHC, and Anzalone did not comply with the terms of the settlement agreement or otherwise pay Plaintiff. *See* ECF No.1. Because the Complaint reasonably can be construed to allege that Defendant Anzalone intended to convert the disputed funds, dismissal for failure to expressly allege Defendant Anzalone's intent to convert is not warranted.

With respect to Defendant Schuler, however, the same is not true. Instead, the Complaint

asserts with regard to Defendant Schuler specifically only that he was the director and vice president of LIFS and that he converted the proceeds of the account for his own use and benefit. *Id*. The allegation that Schuler converted the proceeds is a conclusory legal assertion and therefore is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 555 (2007)). And the mere fact that Schuler served as the director and vice president of LIFS, without more, does not allow for the inference that Schuler converted the funds in the account or that he intended to do so. Accordingly, Defendants' Motion to Dismiss must be granted with respect to Count III as it pertains to Defendant Schuler.

### *III. Conclusion*

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant's Motion to Dismiss ECF No.14 is **GRANTED IN PART and DENIED IN PART**, consistent with this Order. Defendants' Motion is **GRANTED** to the extent that Count III against Defendant Schuler is dismissed. Plaintiff shall have fourteen days to file an amended complaint, should she wish to do so.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 31st day of January 2014.

_____
ROBIN S. ROSENBAUM

Copies furnished to:
Counsel of Record